364 A.2d 1345

COMMONWEALTH of Pennsylvania,
Appellant,

v.

Robert King MAYFIELD.

Supreme Court of Pennsylvania.

Argued June 22, 1976.

Decided Oct. 8, 1976.

Rehearing Denied Nov. 5, 1976.

William T. Nicholas, Dist. Atty., Ross Weiss, First Asst. Dist. Atty., Eric J. Cox, Asst. Dist. Atty., Chief, Appeals Div., for appellant.

Joseph A. Malloy, Jr., Philadelphia, for appellee.

Stephen J. McEwen, Jr., Upper Darby, for Pa. District Attys. Assn.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

This case presents the issue whether Pa.R.Crim.P. 1100(c) [1] ever permits a trial court to grant a timely application by the prosecution to extend the prescribed time for trial on the sole ground that the court cannot provide trial within the prescribed period. Rule 1100(c) provides that applications by the Commonwealth attorney to extend time "shall be granted only if trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth." [2] The Superior Court concluded that this provision does not permit extensions predicated upon what that court termed "judicial delay." It therefore held that the extension granted by the trial court was in error and ordered appellee discharged. [3] We granted the Commonwealth's petition for allowance of appeal and stayed the Superior Court's order. [4] We reverse and reinstate the judgment of sentence.

A written complaint charging driving under the influence of liquor was filed against appellee Robert King Mayfield on November 29, 1974. Mayfield waived a preliminary hearing, and an indictment was returned on February 20, 1975. On that day, the prosecutor certified

1. Pa.R.Crim.P. 1100(c) provides:
   "(c) At any time prior to the expiration of the period for commencement of trial, the attorney for the Commonwealth may apply to the court for an order extending the time for commencement of trial. . . . Such application shall be granted only if trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth. Any order granting such application shall specify the date or period within which trial shall be commenced."

2. Id.

3. Judge Price wrote the majority opinion in which Hoffman, Cercone and Spaeth, JJ., joined. Judge Jacobs wrote a dissenting opinion in which Watkins, P. J., and Van der Voort, J., joined.

4. We hear this case pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 204(a), 17 P. S. § 211.204(a) (Supp.1976).

to the Court of Common Pleas of Montgomery County that the case was ready for trial. The court administrator scheduled the trial for June 6, 1975, 190 days after the filing of the complaint. On May 16, 1975, 11 days before the 180 day period for trial was to expire, the prosecution petitioned the court for an extension of time for trial pursuant to Pa.R.Crim.P. 1100(c) based on the inability of the court to schedule appellee's trial within the period allowed by rule 1100. On May 27, 1975, 180 days after the complaint was filed, appellee filed an application to dismiss the charges with prejudice as provided by rule 1100(f).[5] A hearing was held on both petitions on May 30, 1975, after which the court granted the petition for extension of time for trial, directing that the trial be held on or before September 12, 1975, and denied the application to dismiss. Trial was held on June 10, 1975. Appellee was convicted and sentenced to a fine of $300.

Rule 1100 was adopted by the Court pursuant to our supervisory powers. *Commonwealth v. Hamilton,* 449 Pa. 297, 297 A.2d 127 (1972). It is intended both to reduce the backlog of cases in the courts of common pleas and to provide an objective standard for protection of a defendant's right to a speedy trial.[6] The rule provided a transition period during which both the court system and the attorneys for the Commonwealth could make the ad-

---

5. Pa.R.Crim.P. 1100(f) provides:
    "(f) At any time before trial, the defendant or his attorney may apply to the court for an order dismissing the charges with prejudice on the ground that this Rule has been violated. . . . Any order granting such application shall dismiss the charges with prejudice and discharge the defendant."

6. As this Court stated in *Commonwealth v. Hamilton,* 449 Pa. 297, 308–09, 297 A.2d 127, 133 (1972):
    "Therefore, in order to more effectively protect the right of criminal defendants to a speedy trial and also to help eliminate the backlog in criminal cases in the courts of Pennsylvania we deem it expedient to formulate a rule of criminal procedure fixing a maximum time limit in which individuals accused of crime shall be brought to trial . . . ."

justments necessary to meet the rule's mandate.[7] In adopting rule 1100, we gave practical effect to the United States Supreme Court's observation that state courts could, pursuant to their supervisory powers, establish "'fixed time period[s] within which cases must normally be brought.'" *Commonwealth v. Hamilton*, supra at 302, 297 A.2d at 130 (1972) (quoting *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972)).

The rule does not permit an attorney for the Commonwealth to arbitrarily delay trying a case beyond the prescribed period. Rather, the prosecutor must show "due diligence" in bringing the case to trial and obtain a court extension, or the case is dismissed with prejudice. See Pa.R.Crim.P. 1100(f).

The calendaring of cases lies ultimately within the power and responsibility of the trial court. The ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge § 3.-8(a) (Approved Draft, 1972) provides:

"The trial court has the ultimate responsibility for proper management of the criminal calendar and

7. Pa.R.Crim.P. 1100(a)(1) & (a)(2) provide:
   "(a)(1) Trial in a court case in which a written complaint is filed against the defendant after June 30, 1973 but before July 1, 1974 shall commence no latter than two hundred seventy (270) days from the date on which the complaint is filed.
   "(a)(2) Trial in a court case in which a written complaint is filed against the defendant after June 30, 1974 shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed."
   The comment to rule 1100 states:
   "[A]lthough the ultimate goal is to require all cases to be tried within 180 days from the filing of a complaint, it is recognized that such a goal cannot be achieved immediately in all counties. The backlog of cases in some urban counties and the present lack of sufficient court terms in some less populous judicial districts would prevent the immediate achievement of the goal. Therefore, for cases initiated within the first year, the goal of prompt trial is set at 270 days; thereafter, all counties will be expected to comply with the 180-day limit."

should take measures to insure that cases are listed on the calendar and disposed of promptly as circumstances permit."

Section 1.2 of the ABA Standards Relating to Speedy Trial [8] provides:

"Control over the trial calendar should be vested in the court. The prosecuting attorney should be required to file as a public record periodic reports with the court setting forth the reasons for delay as to each case for which he has not requested trial within a prescribed time following charging. The prosecuting attorney should also advise the court of facts relevant in determining the order of cases on the calendar." [9]

This Court has expressly recognized the need to encourage trial courts, as well as the prosecution, to act promptly in criminal cases. We stated in *Hamilton:*

"[A] mandatory time requirement will act as a stimulant to those entrusted with the responsibility of managing court calendars."

8. ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Speedy Trial § 1.2 (Approved Draft, 1968).

9. See *Commonwealth v. Williams,* 457 Pa. 502, 508–09, 327 A.2d 15, 18 (1975). There, prosecution was initiated prior to the adoption of Pa.R.Crim.P. 1100. This Court found a denial of appellant's constitutional right to a speedy trial using the balancing test mandated in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The delay was caused in part by scheduling problems of the court-appointed attorney. However, this alone did not justify the delay:

"The court not only has a duty to appoint counsel but also the responsibility to exercise its inherent power to control the trial calendar. See Pa.R.Crim.P. 1100."

See also *Commonwealth v. DiPasquale,* 431 Pa. 536, 246 A.2d 430 (1968).

The Supreme Court of the United States has stated that, under the *Barker* test, overcrowded trial dockets cannot justify a denial of speedy trial. As stated in *Barker:*

"A more neutral reason such as . . . overcrowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government."

407 U.S. at 531, 92 S.Ct. at 2192. Accord, *Strunk v. United States,* 412 U.S. 434, 436, 93 S.Ct. 2260, 2262, 37 L.Ed.2d 56, 60 (1973); see *Dickey v. Florida,* 398 U.S. 30, 37–38, 90 S.Ct. 1564, 1569, 26 L.Ed.2d 26, 32 (1970).

449 Pa. at 308, 297 A.2d at 133. This in turn helps eliminate the backlog of criminal cases in the courts of Pennsylvania. Moreover, the commentary to rule 1100 states that the transition period provided by the rule was adopted to afford our courts a period of accommodation to comply with the rule:

> "The backlog of cases in some urban counties and the present lack of sufficient court terms in some less populous judicial districts would prevent the immediate achievement of the goal. Therefore, for cases initiated within the first year, the goal of prompt trial is set at 270 days; thereafter, all counties will be expected to comply with the 180-day limit."

The Superior Court, concluding that rule 1100 was intended to promote prompt action by the courts as well as by the prosecution, held that delays attributable to court administration could never justify an extension under rule 1100(c). The rule, however, was not intended to create such an inflexible result. This Court is aware that, despite diligent efforts by the trial courts, cases may arise when a trial of a defendant cannot be held within the prescribed period. In such circumstances, the policies which prompted the adoption of rule 1100 would not be served by disallowing a reasonable, limited extension specifying "the date or period within which trial shall be commenced." Pa.R.Crim.P. 1100(c). The rule recognizes that "due diligence" is the most that should be demanded from the prosecutor and that if despite such efforts, he cannot prepare for trial within the prescribed period, an extension is permissible. No more rigid result under our present rule is justified when the inability of a trial court to proceed within the prescribed period is at issue.

Here, the prosecution was prepared to try appellant on February 20, 1975, three months before the 180-

day period was to expire.[10]   Nevertheless, because of the backlog of cases, the trial could not be scheduled until June 6, 1975, 10 days after the expiration date. There is nothing in this record to indicate that the cause of the delay was due to the lack of diligence on the part of the trial court. The granting of the extension under rule 1100(c) was therefore appropriate in the circumstances of this case, and rule 1100 was not violated.

However, we recognize the need to insure that trial courts exercise due diligence in implementing the objectives of rule 1100. We do not expect and will not permit the rule to be circumvented by unwarranted grants of extensions.

The public has an overriding interest in the prompt trial of the criminally accused. As stated in the ABA Standards Relating to Speedy Trial § 1.1 (commentary) : [11]

"The interest of the public in the prompt disposition of criminal cases . . . must . . . be recognized. . . . From the point of view of the public, a speedy trial is necessary to preserve the means of proving the charge, to maximize the deterrent effect of prosecution and conviction, and to avoid, in some cases, an extended period of pretrial freedom by the defendant during which time he may flee, commit other crimes, or intimidate witnesses.

"[I]t is generally undesirable to allow an extension of the time limits merely because of the pressure of the trial docket. Such pressures need not unduly delay criminal cases if the calendar is 'governed by two policies—trial of criminal cases before civil cases . . . and, in general, trial of jailed defendants be-

10.  Appellee does not argue that the prosecution did not exercise due diligence in this case. Nor could the record support such a contention.

11.  ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Speedy Trial § 1.1 (commentary) (Approved Draft, 1972).

fore defendants on bail.' Note, 57 Colum.L.Rev. 846, 866 (1957)." [12]

This Court therefore expects our trial courts, as well as counsel for defense and prosecution, to exercise the highest standards of professional responsibility in order to implement rule 1100's mission of speedy trials.

█ Henceforth, the trial court may grant an extension under rule 1100(c) only upon a *record* showing: (1) the "due diligence" of the prosecution, and (2) certification that trial is scheduled for the earliest date consistent with the court's business; provided that if the delay is due to the court's inability to try the defendant within the prescribed period, the record must also show the causes of the court delay and the reasons why the delay cannot be avoided.

Order of the Superior Court is reversed and judgment of sentence is reinstated.

12. In *Barker v. Wingo*, 407 U.S. 514, 519–20, 92 S.Ct. 2182, 2186–87, 33 L.Ed.2d 101, 110–11 (1972), Mr. Justice Powell, speaking for the Supreme Court of the United States, states:
"[T]here is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused. The inability of courts to provide a prompt trial has contributed to a large backlog of cases in urban courts which, among other things, enables defendants to negotiate more effectively for pleas of guilty to lesser offenses and otherwise manipulate the system. In addition, persons released on bond for lengthy periods awaiting trial have an opportunity to commit other crimes. . . . Moreover, the longer an accused is free awaiting trial, the more tempting becomes his opportunity to jump bail and escape. Finally, delay between arrest and punishment may have a detrimental effect on rehabilitation.
"If an accused cannot make bail, he is generally confined . . . in a local jail. This contributes to the overcrowding and generally deplorable state of those institutions. . . . At times the result may even be violent rioting. Finally, lengthy pretrial detention is costly. . . ." (Footnotes omitted.)